# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>GREENWICH SENTRY, L.P., et al.,<br><br>       Debtors. | Honorable P. Kevin Castel<br>12-CV-05622 (PKC)<br><br>ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY |
| CHRISTOPHER McLOUGHLIN KEOUGH, QUANTUM HEDGE STRATEGIES FUND, L.P. and SIM HEDGED STRATEGIES TRUST,<br><br>       Appellants,<br><br>v.<br><br>217 CANNER ASSOCIATES, LLC, LIQUIDATING TRUSTEE FOR GREENWICH SENTRY, L.P.,<br><br>       Appellee. | SAT BELOW:<br>Honorable Burton R. Lifland<br>Case No. 10-16229 (BRL) |

---

## ANSWERING BRIEF ON BEHALF OF APPELLEE, 217 CANNER ASSOCIATES, LLC, LIQUIDATING TRUSTEE FOR GREENWICH SENTRY, L.P.

---

WOLLMUTH MAHER & DEUTSCH LLP
One Gateway Center, Ninth Floor
Newark, New Jersey  07102
(973) 733-9200
JL-6065
Counsel for 217 Canner Associates, LLC,
Liquidating Trustee For Greenwich Sentry, L.P.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................. iii

STATEMENT OF THE BASIS OF JURISDICTION ................................... 1

STATEMENT OF THE ISSUES PRESENTED ........................................... 1

STATEMENT OF APPLICABLE STANDARD OF REVIEW .................... 1

SUMMARY OF THE ARGUMENT ............................................................ 2

STATEMENT OF THE CASE...................................................................... 4

    A.    The Schedules Identified Holders of Interests in Unliquidated Amounts ..............5

    B.    The First Bar Date is Fixed as May 23, 2011..........................................5

    C.    Entry of the Extended Bar Date Order Fixing October 20, 2011 as the Extended Bar Date for all Interest Holders....................................6

    D.    Confirmation of the Debtors' First Amended Plans ................................8

    E.    The Appellants Sought a Distribution Without a Filed Proof of Interest................8

    F.    The Bankruptcy Court's Decision Denying the Motion...........................9

ARGUMENT...............................................................................................11

POINT I

THE APPELLANTS' FAILURE TO TIMELY FILE PROOFS OF INTEREST BY THE EXTENDED DEADLINE BARS THEIR RIGHT TO A DISTRIBUTION.......................11

    A.    The Debtors' History as a BLMIS Feeder Fund Demonstrates Why the Filing and Allowance of Proofs of Claim and Interest Must Be Flexible ............11

    B.    The List of Equity Holders Was Not Intended to Be Relied Upon in the Manner Asserted by Appellants...............................................................13

    C.    The Law Cited by Appellants Does Nothing to Undermine the Bankruptcy Court's Authority to Direct Interest Holders to File Proofs of Interest ......................................................................................17

    D.    The Rules Governing Amendments to Schedules and Claims Objections Do Not Apply Here ...............................................................22

POINT II

THE BANKRUPTCY COURT WAS CORRECT IN UPHOLDING THE EXTENDED
BAR DATE ORDER TO AVOID AN UNDERMINING OF THE BANKRUPTCY
PROCESS ...........................................................................................................................23

POINT III

AS NO CONFLICT EXISTS AMONG THE BAR ORDERS, PLANS AND
CONFIRMATION ORDER, APPELLANTS CANNOT PARTICIPATE WITHOUT
HAVING FILED AN ALLOWED PROOF OF INTEREST ......................................................26

    A.    The Plans Only Provide for Distribution on "Allowed" Claims and
    Interests.................................................................................................................26

    B.    The Confirmation Order's *Res Judicata* Effect Does Not Nullify the
    Extended Bar Date Order.......................................................................................27

POINT IV

DUE PROCESS AND EQUITY WERE NOT OFFENDED BY DENYING
DISTRIBUTION BECAUSE THE APPELLANTS HAD NOTICE OF THE BAR
DATES AND FAILED TO ACT .................................................................................................28

CONCLUSION.........................................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*In re 18th Avenue Realty, Inc.*,
    2010 Bankr. LEXIS 1553 (Bankr. S.D.N.Y. May 7, 2010)............................................. 27

*In re ATD Corp.*,
    352 F.3d 1062 (6th Cir. 2003) ........................................................................................ 19

*In re Bernard L. Madoff Investment Securities, LLC*)
    654 F.3d 229 (2d Cir. 2011)..................................................................................... 12, 13

*In re Bernard L. Madoff Investment Securities, LLC*)
    424 BR. 122 (Bankr. S.D.N.Y. 2010) ............................................................................ 13

*In re Bicoastal Corp.*,
    242 B.R. 43 (B.D. Fla. 1998) .......................................................................................... 29

*In re Celotex Corp.*,
    232 B.R. 493 (M.D. Fla. 1999) ...................................................................................... 25

*In re Charter Communications, Inc.*,
    2012 U.S. App. LEXIS 18538 (2d Cir. Aug. 31, 2012)................................................. 1

*In re Crouthamer Potato Chip Co.*,
    386 F.2d 241 (3d Cir. 1986)........................................................................................... 19

*City of Wilmington v. Wilmer*,
    1997 WL 124151 (Del. Ch. Feb. 20, 1997) ................................................................... 28

*In re D. A. Elia Const. Corp.*,
    2001 U.S. Dist. LEXIS 2134 (W.D.N.Y. Feb. 16, 2001) ......................................... 25, 29

*In re Drexel Burnham Lambert Group, Inc.*,
    148 B.R. 1002 (S.D.N.Y. 1993)..................................................................................... 24

*In re DiCroce*,
    1998 WL 35416878 (1st Cir. B.A.P. Feb. 25, 1998) ................................................ 17, 18

*In re Dodson Aviation, Inc. v. HLMP Aviation Corp.*,
    2011 U.S. Dist. LEXIS 36063 (D. Kan. Mar. 30, 2011).................................................. 18

*In re Dynamic Brokers, Inc.*,
    293 B.R. 489 (9th Cir. Bankr. 2003)................................................................. 23

*First Fidelity Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*,
    937 F.2d 833 (2d Cir. 1991)........................................................................ 24

*In re Frank's Nursery and Crafts, Inc..*,
    2006 WL 2385418 (S.D.N.Y. May 8, 2006) ................................................ 28

*Inwood Laboratories v. Ives Laboratories*,
    456 U.S. 844 (1982).................................................................................... 1

*In re Keene Corp.*,
    188 B.R. 903 (Bankr. S.D.N.Y. 1995).................................................... 24, 28

*In re MarketXT Holdings Corp.*,
    336 B.R. 67 (Bankr. S.D.N.Y. 2006)........................................... 20, 21, 28, 29

*In re McLean Enters.*,
    98 B.R. 485 (Bankr. W.D. Mo. 1989)....................................................... 20

*In re Metromedia Fiber Network, Inc.*,
    416 F.3d 136 (2d Cir. 2005)........................................................................ 1

*Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.*
    *(In re Enron Corp.)*, 419 F.3d 115 (2d Cir. 2005).......................................... 24

*In re New York Seven-Up Bottling Co., Inc.*,
    153 B.R. 21 (Bankr. S.D.N.Y. 1993).......................................... 21, 24, 28, 29

*In re Sleepy Giant, Inc.*,
    120 B.R. 6 (Bankr. D. Conn. 1990) .......................................................... 19

*St. Joseph Stock Yards Co. v. United States*,
    298 U.S. 38 (1936)..................................................................................... 28

*Sure-Snap Corp. v. State Street Bk. and Tr. Co.*,
    948 F.2d 869 (2d Cir. 1991)....................................................................... 28

*In re The Rath Packing Co.*,
    55 B.R. 528, 534 (Bankr. N.D. Iowa 1985) .............................................. 18

*United States v. U.S. Gypsum Co.*,
    333 U.S. 364 (1948).................................................................................... 1

iv

*In re Yonkers Prof'l Hosp.*,
   113 B.R. 153 (Bankr. S.D.N.Y. 1990) ................................................................. 20, 21, 22

**Statutes**                                                                                    **Page(s)**

11 U.S.C. § 521(a)(1) .............................................................................................. 14

11 U.S.C. § 1111(a) .......................................................................................... passim

15 U.S.C. § 78aaa ................................................................................................. 12

28 U.S.C. § 158(a)(1) .............................................................................................. 1

**Rules**                                                                                        **Page(s)**

Fed. R. Bankr. P. 1007 ...................................................................................... passim

Fed. R. Bankr. P. 1007(a)(3) ................................................................................. 14

Fed. R. Bankr. P. 3003(b)(2) ................................................................................. 15

Fed. R. Bankr. P. 3003(c)(2) ................................................................................. 15

Fed. R. Bankr. P. 3007 .......................................................................................... 23

Fed. R. Bankr. P. 8013 ............................................................................................ 1

Fed. R. Bankr. P. Official Form 6 .................................................................... 14, 15

Fed. R. Bankr. P. Official Form 7 ........................................................................ 14

**Other**                                                                                        **Page(s)**

H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977) ......................................... 16

Resnick, Alan N. & Sommer, Henry J., 7 Collier on Bankruptcy
   ¶ 1111.LH[1] (16th ed. 2010) …… .............................................................. 16, 17

Resnick, Alan N. & Sommer, Henry J., 9 Collier on Bankruptcy
   ¶ 3003.02[3] (16th ed. 2010) ........................................................................... 15

## STATEMENT OF THE BASIS OF JURISDICTION

Pursuant to 28 U.S.C. § 158(a)(1), this Court has jurisdiction to review the decision of the

bankruptcy court, which is a final order.

## STATEMENT OF THE ISSUES PRESENTED

1.      Whether the bankruptcy court correctly concluded that bankruptcy law and the
governing rules permitted it to enter an order that required equity holders to file proofs of interest
regardless of whether such holders were listed in the debtor's statement of financial affairs in
estimated percentages.

2.      Whether the bankruptcy court was correct in upholding its order to avoid
undermining the bankruptcy process.

3.      Whether the bankruptcy court properly found that the plans of reorganization and
confirmation order did not override the proof of interest bar date order.

4.      Whether the bankruptcy court correctly held that due process had been met.

## STATEMENT OF APPLICABLE STANDARD OF REVIEW

Questions and conclusions of law are subject to plenary review, *i.e.*, this Court is not

bound by the Bankruptcy Court's view of the law.  *See In re Metromedia Fiber Network, Inc.*,

416 F.3d 136, 139 (2d Cir. 2005).  A mixed question of law and fact is subject to *de novo* review.

*See* Fed. R. Bankr. P. 8013.  A ruling in which the court below exercised its equitable powers

may only be reversed if it is demonstrated that the ruling was an abuse of discretion.  *See In re*

*Charter Communications, Inc.*, 2012 U.S. App. LEXIS 18538 at *15-16 (2d Cir. Aug. 31, 2012).

Findings of fact are reviewable under the "clearly erroneous" standard.  *See Inwood*

*Laboratories v. Ives Laboratories*, 456 U.S. 844, 855 (1982).  A finding is clearly erroneous

when although there is evidence to support it, the reviewing court on the entire evidence is left

with the definite and firm conviction that a mistake has been committed.  *United States v. U.S.*

*Gypsum Co.*, 333 U.S. 364, 395 (1948).

In this case, the facts are not subject to legitimate dispute. The Appellants do not deny having received and ignored the bar order notice. Similarly, based upon the totality of the circumstances, the lower court concluded that GS did not list its equity holders in a liquidated amount. The foregoing findings may only be rejected if clearly erroneous. The lower court's rulings as to the law and to the application of the facts to the law are subject to review under the plenary standard. Any ruling that is an equitable determination is reviewed for an abuse of discretion.

## SUMMARY OF THE ARGUMENT

Christopher McLoughlin Keough, Quantum Hedge Strategies Fund, L.P. and SIM Hedged Strategies Trust (collectively the "Appellants" or "Unfiled Limited Partners") are former limited partners of Greenwich Sentry, L.P. ("GS"), one of the Chapter 11 debtors. They failed or refused to file proofs of their limited partnership interests in the GS case by a court-established bar date. Many months after the deadline and well after the GS plan of reorganization was confirmed by the bankruptcy court below, the Appellants moved to have their interests "deemed allowed." The Appellants never denied being fully informed of the bar order, the need to file a proof of interest and the deadline for filing, but they chose to ignore the order. Now, having been barred from participation in any distribution – the clearly stated penalty for such a failure – Appellants want this to Court to render the bar order nugatory. The Unfiled Limited Partners raise several arguments, but all are ultimately unavailing. The appeal should be denied.

The Appellants argue that the "comprehensive statutory scheme" for filing proofs of interest protects them from their own inaction by deeming their interests allowed. They are wrong. The statutes purportedly governing the filing of proofs of interest in title 11 of the United States Code, 11 U.S.C. §§ 101—1532 (the "Bankruptcy Code" or the "Code"), contain no such

protection.  Rather the Code, the applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" or"Rules") and the related Official Forms support the lower court's decision to deny the motion.  Congress intended bankruptcy courts to have the ability to tailor the process of filing proofs of claims and interests to fit the circumstance; not, as Appellants claim, to hamstring courts through the use of unnecessary hurdles.  The case law cited by Appellants in support of their argument, all of it involving proofs of claim and not interests, is not on point.

It is undisputed that the Appellants were also fully informed of both the date and the need to file their own proofs of interest.  They knew or should have known that the list of equity holders, upon which they allegedly relied, was insufficient to establish an allowed interest under the Code.  First, the bar order and notice advised them of that fact.  Second, the list upon which they rely itself contained express statements that it was only in an estimated percentage and subject to infirmities.  Third, the Appellants were mistaken when concluding that an estimated percentage is the equivalent of a liquidated amount.  Simply put, faced with an order containing a clear notice, the Appellants made the mistake of wilfully disregarding it.

The Appellants also cannot rely upon GS's plan of reorganization for deemed allowance of their interests.  The plan and confirmation order do not "deem allowed" or "deem filed" their unfiled proofs of interest.  Again, the Appellants continue with the false premise that because GS did not tag their interest with the phrase "unliquidated", it is magically transformed into a "liquidated amount."

Finally, the Appellants reliance on the equities and assertions that due process was violated fails.  The Debtors provided notice to all of their former limited partners of the bar date and the need to file proofs of interest, regardless of what they thought.  The Unfiled Limited Partners do not deny receiving such notice, which contained bold, capitalized warnings of what

3

would result should they fail to file timely.  Instead, they argue that such notice could *never* be effective as to them.  Appellants argue that they enjoy a special status as a result of the statutory scheme (which they analyze incorrectly) and the fact that they hold interests "liquidated in amount" (which is not the case) that makes them immune from any order of the Bankruptcy Court.  Based upon these false assumptions, the Appellants argue that the Debtors needed to undertake steps that are not, in fact, required by the Code or Rules.  Having appeared before the Bankruptcy Court and admitted being on notice and their willful failure to follow a court order, Appellants do not have an equitable argument.

As set forth in more detail below, the appeal should be denied, and the Bankruptcy Court's ruling affirmed.

## STATEMENT OF THE CASE

On November 19, 2010, GS and its affiliate, Greenwich Sentry Partners, L.P. ("GSP" and together with GS, the "Debtors"), filed petitions for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  AA-2. [1]  The Debtors were feeder funds that had invested primarily all of their assets with ponzi-schemer Bernard Madoff's Bernard L Madoff Investment Securities, LLC ("BLMIS").  When the BLMIS fraud was discovered, the Debtors were found to have lost hundreds of millions of dollars and were being sued for hundreds of millions more.  SA-37.  They filed Chapter 11 to seek to preserve the value of their assets while seeking to settle litigation with the trustee appointed to recover on behalf of BLMIS.  SA-38.  GS and GSP successfully resolved the litigation and confirmed their plans of reorganization, which provided

---

[1] Unless otherwise noted, citations to "AA-" reference the pages contained in Appellants' Appendix filed with their opening brief, and "SA-" reference the page numbers set forth in the Supplemental Appendix filed simultaneously with this Answering Brief.

for the establishment of a liquidating trust for each Debtor's estate.  AA-171.  217 Canner

Associates, LLC, was appointed the liquidating trustee for both trusts (the "Trustee").  AA-194.

**A.**     **The Debtors Identified Holders of Interests in Unliquidated Amounts**

On December 30, 2010, the Debtors filed their Summary of Schedules (the "Schedules")

and Statement of Financial Affairs ("SOFA").  Included in each Debtor's SOFA as Attachment

B is a list of known interest holders of the Debtors (the "Equity Holders List").  AA-83.  The list

of equity holders is required by Rule 1007.  The Equity Holder List does not include a liquidated

amount for each interest.  Rather, it provides the "Estimated Percentage Ownership" of each

interest holder and contains the following footnote:

> This list of equity holders is based upon the administrator's records
> of investors in Greenwich Sentry, L.P. and in Greenwich Sentry
> Partners, L.P. as of November 30, 2008.  This list may include
> limited partners that made redemption requests prior to November
> 30, 2008, but to whom no redemption payments were made as a
> result of the disclosure on or about December 11, 2008 of the
> ponzi scheme that had been operated by Bernard L. Madoff
> Investment Securities LLC.

AA-83, n.1.  Other than being identified as "Estimated Percentage Ownership," each limited

partner's interest is not otherwise listed as either disputed (or undisputed), liquidated (or

unliquidated) or fixed (or contingent).  Indeed, in no place does the SOFA contain a requirement

for such a designation.  AA-71 to AA-94.

**B.**     **The First Bar Date Is Fixed as May 23, 2011**

On April 6, 2011, the Court entered an order fixing May 23, 2011 (the "First Bar Date")

as the date for filing proofs of claim and proofs of interest pursuant to Bankruptcy Rule

3003(c)(3) (the "First Bar Order").  AA-103.  According to the First Bar Order, purported claim

and interest holders need not file a proof of claim or proof of interest if the claim or interest is

listed in the Debtors' schedules, "provided that (i) the Claim and/or Interest is not scheduled as

'disputed,' 'contingent,' or 'unliquidated.'"  AA-104.  Each of the Unfiled Limited Partners received notice of the First Bar Date as set forth in the Certificate of Service of the First Bar Order.  Nevertheless, each of the Unfiled Limited Partners failed to file a proof of interest by the First Bar Date.

**C.     Entry of the Extended Bar Date Order Fixing October 20, 2011
        as the Extended Bar Date for All Interest Holders_____**

On July 20, 2011, the Debtors filed their proposed Chapter 11 Reorganization Plans (the Proposed Plans").  On August 25, 2011, four limited partner interest holders of GS and two limited partner interest holders of GSP (the "Objecting Interest Holders") filed an objection to the Debtors' Proposed Plans because they failed to file proofs of interest by the First Bar Date and would not be entitled to distribution.  AA-133.  As with Appellants, the Objecting Interest Holders were listed with "Estimated Percentage Ownership."  The Objecting Interest Holders asserted that it was ambiguous as to whether they were required to file proofs of interest as Section 1111(a) of the Bankruptcy Code provides that if a creditor's claim is "scheduled" and is "not scheduled as disputed, contingent or unliquidated," then the creditor is "deemed to have filed a proof of claim or interest."  AA-139.  Although the Debtors did not agree that the interests were liquidated or that there was ambiguity, the Debtors agreed to extend the bar date to make clear to all interest holders that they must file proofs of interest even if their interests are not scheduled as disputed, contingent, or unliquidated.  AA-146 to AA-148.

On September 20, 2011, the Court entered an order extending the time for limited partner interest holders to file a proof of interest an additional thirty (30) days (the "Extended Bar Date Order").  AA-147.  Thus, all limited partner interest holders were required to file a proof of interest on or before October 20, 2011 (the "Extended Bar Date") or they would forfeit their right to any distribution from the estate.  The Extended Bar Date Order and the carefully tailored

notice of the Extended Bar Date (the "Extended Bar Date Notice") expressly directed all limited

partners to file a proof of interest by the Extended Bar Date, stating, *inter alia*:

> The Extension Notice shall, among other things, advise Excluded
> Limited Partners that notwithstanding the fact that their applicable
> Interests may not be scheduled as 'disputed,' 'contingent' or
> 'unliquidated' in the List of Equity Holders annexed to each of
> Debtor's Statement of Financial Affairs, such Excluded Limited
> Partners are still required to timely file a Proof of Interest.

AA-155, ¶ 4.  The Extended Bar Date Notice provided as follows:

> If you have an Interest against either of the Debtors that arose on
> or prior to the Filing Date, . . . you **MUST** file a Proof of Interest
> to share in distributions from the Debtors' bankruptcy estates and
> vote with respect to such Interest on a Chapter 11 plan filed by the
> Debtors."

AA-153 (emphasis in original).  The Extended Bar Date Notice also provided:

> **REGARDLESS OF WHETHER YOUR INTEREST IS NOT
> SCHEDULED AS "DISPUTED," "CONTINGENT" OR
> "UNLIQUIDATED" IN THE LIST OF EQUITY HOLDERS
> ANNEXED TO EACH DEBTOR'S STATEMENT OF
> FINANCIAL AFFAIRS, YOU ARE STILL REQUIRED TO
> FILE A TIMELY PROOF OF INTEREST.**

AA-154 (emphasis in original).

Moreover, unlike the First Bar Date notice, the Extended Bar Date Notice *did not include*

any exception under the heading "WHO NEED NOT FILE A PROOF OF INTEREST" for those

interest holders listed in the Debtors' Schedules but not listed as either "disputed," "contingent,"

or "unliquidated."  *Compare* First Bar Date notice, SA-13, ¶ 4(c) *with* Extended Bar Date Notice,

AA-153, ¶ 4.  Each of the Unfiled Limited Partners received notice of the Extended Bar Date as

set forth in the Certificate of Service of the Extended Bar Date Order.  Notwithstanding the

above additional notice, the Unfiled Limited Partners failed to file proofs of interest by the

Extended Bar Date.

D.    **Confirmation of the Debtors' First Amended Plans**

On September 26, 2011, the Debtors filed their First Amended Plans of Reorganization (each a "Plan" and collectively, the "Plans"), along with an amended Disclosure Statement for each of the Plans (each a "Disclosure Statement" and collectively, the "Disclosure Statements"). It is not disputed that the Unfiled Limited Partners received a timely copy of the Disclosure Statement and Plan for GS.  The GS Plan entitled Allowed Claims and Allowed Interests to a distribution depending upon the "Class" into each claim or interest fell.  AA-176 to AA-177.  To be "Allowed" under the Plan, GS required the filing of a proof of claim or interest, unless the "Claim or Interest has been or hereafter is listed by the Debtor in the Schedules as *liquidated in amount* and not disputed or contingent."  *See* Definition of "Allowed" AA-167 to AA-168; *see also* AA-16, ¶ 14.  The interests were clearly <u>not</u> listed in the Debtors' SOFA as "liquidated in amount," but instead were listed in terms of "Estimated Percentage Ownership."  AA-83.  Consequently, interest holders cannot satisfy the definition of "Allowed Interests" simply by relying on the SOFA, which were not liquidated in amount as contemplated by the GS Plan.

On December 22, 2011, the Plans were confirmed by Order of the Court (the "Confirmation Order").  AA-189.  The Confirmation Order provided that the terms of the Plans shall govern classification of claims and interests for purposes of distribution.  AA-193, ¶ 3. However, neither the Confirmation Order nor the Plans provided that the Plans or Confirmation Order superseded or otherwise nullified the Extended Bar Date Order.

E.    **The Appellants Sought a Distribution Without a Filed Proof of Interest**

On April 30, 2012, the Appellants filed their Motion seeking distributions under the Plans as Class 4 interest holders.  AA-13.  At the time they filed their Motion, almost one year had passed since the First Bar Date and over five (5) months had passed since the Extended Bar Date.

The Appellants, collectively and individually, still did not file a proof of interest in the Debtors'

cases.  In their Motion, the Unfiled Limited Partners neither argued that they did not receive

notice of the First Bar Date or Extended Bar Date, nor that the notice received was in any way

ambiguous or misleading.  Instead, they alleged that they were entitled to distribution as the

Plans provide for distribution to their purported interests and the Confirmation Order nullifies the

Extended Bar Date Order through the Confirmation Order's "*res judicata* effect."  *See* AA-20 to

AA-22.  The Appellants further argue that, notwithstanding that the Schedules and SOFA do not

contain liquidated amounts, as well as the Extended Bar Date Order's explicit direction to the

contrary, their interests were "deemed filed" by operation of 11 U.S.C. § 1111(a).  AA-22 to

AA-24.  Finally, the Appellants argued that they were entitled to distribution because to find

otherwise would amount to a deprivation of their property without due process of law.  AA-24 to

AA-26.

The Trustee filed opposition, noting that the Appellants failed to assert they were

confused or mislead in any way by the Extended Bar Date Order.  AA-39.  Given their decision

not to file proofs of interest, the Trustee asserted that the Unfiled Limited Partners were barred

by the plain language of the order.  AA-39 to AA-41.   The Trustee further asserted that the Plan

and Confirmation Order did not absolve interest holders from filing a proof of interest in a

liquidated amount and that the Code did not correct for their failure.  AA-41 to AA-47.  Finally,

the Trustee pointed out that due process considerations and the equities favored denial of the

motion.  AA-47 to AA-48.

**F.**     **The Bankruptcy Court's Decision Denying the Motion.**

The Bankruptcy Court found that the Unfiled Limited Partners "blatantly ignored an

explicit order of this Court."  AA-2.  The court noted that Extended Bar Date Order stated in

"bold capital letters, that all interest holders must file proofs of interest by the bar date, notwithstanding what is contained in the Debtors' schedules."

The Bankruptcy Court addressed and rejected each of the Appellants' arguments.  The court noted the importance and breadth of bar date orders.  AA-5.  The decision carefully analyzed the applicable Code provisions and the related Rules, which it held were designed to promote procedural efficiency in Chapter 11 cases.  AA-6.  The Court concluded that it had the authority to enter the bar order consistent with the statutory provisions, that there was no nullification of the bar order's requirements through confirmation of the GS Plan and that the order did not offend due process.  AA-7 to AA-10.  The Appellants, thereafter, filed their notice of appeal.

**ARGUMENT**

**POINT I**

**THE LIMITED PARTNERS' REFUSAL OR FAILURE TO
TIMELY FILE PROOFS OF INTEREST BY THE EXTENDED
DEADLINE BARS THEIR RIGHT TO A DISTRIBUTION**

The Appellants focus the majority of their argument on the claim that they are absolved by statute from having to file a proof of interest, notwithstanding the explicit direction otherwise in the Extended Bar Date Order and related notice. The Appellants theorize that as GS filed its Equity Holders List without an express designation that the interests were disputed, contingent or unliquidated in amount, no order can disallow their right to a distribution under the Plan. The Appellants have misstated the applicable law. In fact, the Code and Rules contain no safe harbor for their actions, and the Bankruptcy Court was correct to reject their arguments.

**A.      The Debtors' History as a BLMIS Feeder Fund Demonstrates Why the
         Filing and Allowance of Proofs of Claim and Interest Must Be Flexible**

GS's and GSP's Chapter 11 cases are just a few of the messy by-products of an epic Ponzi scheme. As noted above, GS and GSP invested almost all of their limited partners' investments through BLMIS, the vehicle through which Bernard Madoff perpetrated one of the greatest frauds of all time. Given this background, one can understand that the GS and GSP cases are not run-of-the-mill bankruptcies.

For years, GS had received and relied upon account statements from BLMIS that purported to show the increased value of the fund's invested assets. Upon discovery of the fraud, the statements proved to be nothing but figments of Madoff's imagination. GS found that it not only had made no profits, it had lost hundreds of millions of its limited partners' money. Nothing was as it was thought to be, and GS's Equity Holders List reflected that uncertainty.

11

The Second Circuit highlighted the financial disaster that the Madoff Ponzi scheme created for funds like GS when examining how the fiduciary responsible for the BLMIS estate was to determine who and how much duped creditors and investors were to receive in recoveries. In *In re Bernard L. Madoff Investment Securities, LLC*, the circuit court was asked to address whether the trustee appointed pursuant to the Securities Investor Protection Act, 15 U.S.C. §78aaa *et seq.* ("SIPA") was correct in calculating each investment customers "net equity" claim using actual investments and withdrawals, rather than relying on the official investment statements prepared by BLMIS.  654 F.3d 229 (2d Cir. 2011), *cert. dismissed sub. nom. Sterling Equities Assocs. v. Picard*, ___ U.S. ___, 132 S. Ct. 2712, 183 L. Ed. 2d 65 (2012), *and cert. denied sub. nom. Velvel v. Picard*, 2012 U.S. LEXIS 4771, 80 U.S.L.W. 3707 (2012), *Ryan v. Picard*, 2012 U.S. LEXIS 4771, 80 U.S.L.W. 3707 (2012).  Many investors favored use of the last BLMIS account statements, presumably because they showed significant value still owed them.  *See id*. at 235.

In resolving the question, the court noted key undisputed facts:

- Madoff generated fictitious paper account statements and trading records in order to conceal the fact that he engaged in no trading activity whatsoever

- Although Madoff's scheme was engineered so that customers always appeared to earn positive annual returns, the dreamt-up rates of return Madoff assigned to different customers' accounts varied significantly and arbitrarily

- [T]he customer statements reflected unvarying investor success; but the only accurate entries reflected the customers' cash deposits and withdrawals

- The final customer statements issued by BLMIS falsely recorded nearly $64.8 billion of net investments and related fictitious gains

*Id*. at 232.  The circuit panel noted that while using the last statement may be appropriate in conventional SIPA cases, because of the wholesale fraud, reliance on them in the context of Madoff's Ponzi would be "inequitable."  *Id*. at 238.

> [The] consequence of such a scheme would be that those who had already withdrawn cash deriving from imaginary profits in excess of their initial investment would derive additional benefit at the expense of those customers who had not withdrawn funds before the fraud was exposed.

*Id*.  The court also concluded that "it would have been legal error for the Trustee to 'discharge claims upon the false premise that the customers' securities positions are what the account statements purport them to be.'"  *Id*. at 241, *quoting In re Bernard L. Madoff Investment Securities, LLC*, 424 B.R. 122, 125 (Bankr. S.D.N.Y. 2010) (Lifland, J.).

In the GS case, the records of profits and investments that GS and GSP had were tainted by the Madoff fraud.  Not surprisingly, GS filed its Equity Holders List with what it disclosed was only an estimate of each holders percentage of ownership.  The list also contained a footnote explaining GS's concern related to certain redemptions.  The fact that the Debtors included such warnings went above and beyond the requirements of the Code.  As discussed in detail below, unlike the schedules of creditors and their claims there is no obligation to designate an interest as or as not disputed, contingent or unliquidated.

**B.     The List of Equity Holders Was Not Intended to Be Relied
        Upon in the Manner Asserted by Appellants**

The Appellants argue that the Code has a "comprehensive statutory scheme" that immunizes them from an order of the Court purportedly disallowing their interests.  In fact, the "scheme" to which Appellants point does not, either expressly or impliedly, support their position.  Appellants rely on citations and case law that deals almost exclusively with claims, not interests and their arguments miss the key point—while the Code may establish a comprehensive

13

(and apparently immutable) scheme for claims, it does not do something remotely similar with interests.   The unique treatment of interests and the inherent power of the Bankruptcy Court to manage a bankruptcy case efficiently and fairly require this Court to reject the appeal.

Code Section 521 does require a debtor-in-possession to file a list of creditors and a schedules and statements of assets and liabilities, current income and expenditures, financial affair.  *See* 11 U.S.C. § 521(a)(1).  With the exception of the list of creditors, the bankruptcy court may waive the requirements of Section 521(a)(1).  *See* § 521(a)(1)(B).  There is no requirement in Section 521 to file a list of equity holders.

The requirement for a list of equity holders is set forth in Rule 1007 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules" or "Rules").  Rule 1007 provides:

> In a chapter 11 reorganization case, unless the court orders otherwise, the debtor shall file within 14 days after entry of the order for relief a list of the debtor's equity security holders of each class showing the number and kind of interests registered in the name of each holder, and the last known address or place of business of each holder.

Fed. R. Bankr. P. 1007(a)(3).  Thus, a list of equity holders is required by court rule and only in Chapter 11 cases.  The rule makes no mention of designating an equity interest as disputed, contingent or unliquidated in amount.  In fact, Rule 1007 only requires a list showing the "number and kind of interests" by equity class.  *See id.*  As noted in Appellants' Brief at 7, the list is also expected to conform with Official Form 7, which requires a list of each holder and percentage of partnership interests.[2]  Official Form 7 does not require that a debtor designate such an interest as disputed, contingent or unliquidated in amount.  *See* AA-79.  By contrast, a debtor must file a schedule of its creditors using Official Form 6, which contains a requirement that the debtor expressly determine whether each individually scheduled creditor's claim is or is

---

[2] The Official Forms are promulgated with the Bankruptcy Rules.

not disputed, contingent or unliquidated in amount.  *See, e.g.,* AA-68 (Schedule F).  *See also*
Fed. R. Bankr. P., Off. Form 6, Sch. F. (2011).

      The rules governing the filing of proofs of claims and interests provide no particular
instruction as to the listing or scheduling of equity interests.  Bankruptcy Rule 3003 provides that
the Debtor's list of equity holders "shall constitute prima facie evidence of the validity and
amount of the equity security interests and it shall not be necessary for the holders of such
interests to file a proof of interest."  Fed. R. Bankr. P. 3003(b)(2).  Rule 3003 provides the
creditors and equity interest holders must file a proof of claim or interest if their claim or interest
is "not scheduled or is scheduled as disputed, contingent, or unliquidated."  Fed. R. Bankr. P.
3003(c)(2).  Of course, Rule 1007, Rule 3003 and the Official Forms do not direct or provide for
the debtor to make any designation on its list of equity holders, so the reference is, at best, a
confusing one.[3]  In fact, no Rule directs a designation as to interests.

      Moreover, where the list contains express disclaimers as to accuracy (as did the Debtors
in this case), there is no authority that suggests an equity holder may rely upon it.  As one
commentator has noted, what Rule 3003 makes clear is that "the security holder has the same
burden to check the interest holder list and file a proof of claim *if any question of the validity,
nature or amount of the interest is indicated*."  9 *Resnick, Alan N. & Sommer, Henry J., Collier
on Bankruptcy,* ¶ 3003.02[3], at 3003-4 to 3003-5 (16th ed. 2010) (emphasis added).  Indeed, that
same commentator concludes that the Rules governing interests are generally less favorable to
equity holders than creditors.  *See id*. n.14 (unlike creditor claims, there is no presumption of
*prima facie* validity for interests).

---

[3] Moreover, the language of Rule 3003 is inaccurate.  A debtor files a "list" of equity holders in a
Chapter 11 pursuant to Rule 1007 and Official Form 7, not a "schedule" as contained in Official
Form 6.

Finally, Section 1111(a) does not add a requirement that the list of equity holders contain a designation of disputed, contingent or unliquidated in amount.  The section provides as follows:

> A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(a)(1) or 1106(a)(2) of this title, except a claim or interest that is *scheduled* as disputed, contingent, or unliquidated.

11 U.S.C. § 1111(a) (emphasis supplied).  On its face, the statute does not direct a debtor to schedule equity interest holders or make designations as to their interest.  Indeed, the listing of interests is not governed by Section 521 at all.  And, as noted, there is no previous requirement to "schedule" interests or to accord or not accord them status as disputed, contingent or unliquidated in amount in any other Code provision.  In fact, the reference to "scheduled as disputed, contingent, or unliquidated" could not apply to interests as neither a schedule is filed nor is there a requirement anywhere to choose a designation of disputed, contingent, or unliquidated in the Rules or Official Forms.  Section 1111(a)'s language appears at odds with the Code and the Rules as they apply to interests.  In a best case scenario for the Appellants, the language creates an ambiguity, not a safe haven, for non-filing interest holders.

Understanding the purpose behind Section 1111(a) reveals why it does not provide the protection that Appellants claim.  The legislative history states that it was implemented to dispense "with the need for every creditor and equity security holder to file a proof of claim or interest in a reorganization case."  *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977), *reprinted in Resnick, Alan & Sommer, Henry J., 7 Collier on Bankruptcy,* ¶ 1111.LH[1], at 1111-33 (16th ed. 2010).  According to Congress, "*[u]sually* the debtor's schedules are accurate enough that they will suffice to determine the claims or interests allowable in a case."  *Id.* (emphasis supplied).  The Code section was derived from superseded Chapter X rules, which

16

were simply designed alleviate inconvenience and cost, not as a barrier to contesting non-filing creditors and interest holders. *Id.*

In short, Appellants' "comprehensive statutory scheme" is hardly comprehensive as to equity interests. There are no requirements in any of the governing statutes or rules that GS's Equity Holders List contain an express designation that the Unfiled Limited Partners interests were unliquidated in amount. Moreover, Appellants were on notice that the percentages were only estimated, subject to outside factors that made them uncertain and, in fact, unliquidated in amount. Thus, to protect themselves from the uncertainty, the Unfiled Limited Partners had an obligation to file proofs of interest, as directed by the very notice they ignored. Finally, while Section 1111(a) was intended to deal with the potential inconvenience and expense of forcing interest holders to file in most cases, Congress did not intend for it to take the power away from the court responsible for managing the bankruptcy case.

**C.     The Law Cited by Appellants Does Nothing to Undermine the Bankruptcy Court's Authority to Direct Interest Holders to File Proofs of Interest**

The Court properly rejected the Appellants' argument and the cases it cited below when upholding its Extended Bar Date Order. The former limited partners rely heavily on *In re DiCroce*, 1998 WL 35416878, at * 2 (1st Cir. Bankr. Feb. 25, 1998), but the facts are quite different. In that case, the schedules listed the creditor "as the holder of a liquidated, noncontingent, undisputed, unsecured, nonpriority claim in the amount of $287,486.49." *DiCroce*, 1998 WL 35416878, at *1. The Bankruptcy Code, Rules and Official Forms all required that the designations be included in the debtor's schedule. Moreover, in *DiCroce*, the form of notice generically required *all* creditors to file proofs of claim in accordance with the bar date notice and was hardly a model of clarity. *Id.* at *3.

17

By contrast, the Appellants were listed as "estimated," in the form of percentages and subject to redemption payments made by investors in the Equity Holders List.  By definition, if an interest is listed as a percentage of an unknown amount, the interest is contingent upon the overall amount of funds subject to distribution to limited partners under the Plans and is, thus, unliquidated.  *See Dodson Aviation, Inc. v. HLMP Aviation Corp.*, 2011 U.S. Dist. LEXIS 36063, at *8-9 (D. Kan. Mar. 30, 2011) (stating general rule that claim only becomes liquidated "when both the amount due and the date on which it is due are fixed and certain, or when the same become definitely ascertainable by mathematical computation").  No mathematical certainty existed here.  The Bankruptcy Court's findings in that regard cannot be clearly erroneous.  There were also no obligations for GS to expressly add the word "unliquidated in amount" or "unliquidated" to the Equity Holders List.

Faced with statutes and rules that do not directly address the issue, the Bankruptcy Court acted well within its authority when it entered the Extended Bar Date Order.  The order was explicit and designed to make clear that in order to receive distributions, all Class 4 interest holders under the Plans were required to file proofs of interest, notwithstanding any argument that they could make that their interests were not listed as "disputed," "contingent," or "unliquidated."  Indeed, Appellants do not dispute they received and understood the Extended Bar Date Order.

The Extended Bar Date Order did not run afoul of any other provision under the Code. There is no requirement that the interest must be specifically listed as "unliquidated," "contingent," or "disputed" if the manner in which the interest was listed clearly indicated the interest's unliquidated, contingent, or disputed nature.  *See In re The Rath Packing Co.*, 55 B.R. 528, 534 (Bankr. N.D. Iowa 1985) (ruling that IRS proof of claim filed one-and-a-half months

after the bar date was not saved by Section 1111(a) when claim was listed in debtor's schedules in "an unknown amount").

The Appellants also cite *In re ATD Corp.*, 352 F.3d 1062 (6th Cir. 2003), in which the debtor listed the movant's claims as "undisputed, non-contingent, liquidated claims in the amounts of \$336,435.89 and \$523,308.44, respectively." *ATD Corp.*, 352 F.3d at 1063. Thus, as in *DiCroce*, but unlike here, the claims in question were expressly listed as undisputed, non-contingent, and liquidated in specific dollar amounts. *ATD Corp* did not rule on whether the bankruptcy court had authority to modify the requirements of Section 1111(a) in the bar order, but held that under those facts, the bar date notice did not adequately notify creditors that they cannot rely on Section 1111(a). *Id.* at 1066. Here, the Extended Bar Date Order and Bar Date Notice explicitly informed all purported interest holders that they must file a proof of interest to receive distribution, notwithstanding the fact that their interest was not listed as "disputed," "contingent," or "liquidated" in the Schedules (which is the substantive basis for unfiled interests being "deemed filed" by operation of Section 1111(a)).[4]

Nevertheless, even if the Extended Bar Date Order could be found to have modified the provisions of Section 1111(a) in some way, the better reasoned case law concludes that courts have the authority to enter orders requiring creditors and investors to file proofs of claim or interest regardless of what is stated in the schedules. As Judge Lifland noted in his decision, in most cases, the presumption is that a debtor has sufficient information to accurately identify claims and interests and that it can be relied upon for convenience purposes. *See* AA-6, *quoting*

---

[4] Further, *In re Sleepy Giant, Inc.*, 120 B.R. 6 (Bankr. D. Conn. 1990), cited by the Movants, is wholly inapplicable because this case involved the filing of a proof of claim after the bar date that was allowed based on the doctrine of "excusable neglect" under Bankruptcy Rule 3003 when the notice provided did not identify the relevant Debtor alias that was applicable for the creditor. *Sleepy Giant*, 120 B.R. at 7-8. Here, the Unfiled Limited Partners have not filed a proof of interest.

*In re Crouthamel Potato Chip Co.*, 786 F.2d 141, 145 (3d Cir. 1986).  Yet, as made clear by the legislative history, Congress did not expect that schedules and statements of financial affairs to be reliable in every case.

The Bankruptcy Court properly recognized the weakness of Appellants' position, as well as the necessary flexibility that has to exist for Chapter 11 to work.  In its decision, the court held that it had the authority to override Section 1111(a) to correct for any "double deeming" effect of Section 1111(a) through the use of a court order, regardless of what the Schedules may contain.[5] *See* AA-7, *citing In re Yonkers Prof'l Hosp.*, 113 B.R. 153, 157 (Bankr. S.D.N.Y. 1990); *In re McLean Enters.*, 98 B.R. 485, 486 (Bankr. W.D. Mo. 1989); *In re MarketXT Holdings Corp.*, 336 B.R. 67, 71-72 (Bankr. S.D.N.Y. 2006).  The ruling is consistent with Congressional intent that Section 1111(a) is designed to deal with most instances, not all.  Thus, the presumption made by Appellants throughout the course of these proceedings—that Section 1111(a) is a technical gatekeeper that is applied across the board in all instances—does not reflect either the language or history of the section.

Unlike the cases cited by the Appellants from other circuit or lower courts, in the Second Circuit, it is not uncommon for bankruptcy courts to require all creditors and interest holders to file proofs of claim notwithstanding the provisions of Section 1111(a), as long as all creditors and interest holders received proper notice of the filing requirement.  For example, in *In re MarketXT Holdings*, the court denied distribution on a creditor's claim when the bar order required all creditors to file proofs of claim, even if such claim was listed as secured, fixed, or liquidated – in direct contravention of the text of Section 1111(a).  336 B.R. at 72.  According to the Court:

---

[5] Although with respect to part of its ruling it was not necessary, the lower court correctly noted that the Equity Holders Lists did not contain liquidated amounts.  AA-9.

> The 'bar date order' entered in the Chapter 11 case *required all creditors with secured or unsecured, contingent or fixed, liquidated or unliquidated claims to file a proof of claim* by a date certain.  This order was binding on [the creditor] as an alleged lienholder, whose claims do not 'ride through' a Chapter 11 case in the face of a valid bar order.

*In re MarketXT Holdings*, 336 B.R. at 71-72 (emphasis added).

In *In re New York Seven-Up Bottling Co., Inc.*, 153 B.R. 21 (Bankr. S.D.N.Y. 1993), the court dismissed a creditor's proof of claim that was filed one month after the bar date.  The court refused to recognize the claim as "deemed filed" under Section 1111(a) because "the double deeming as to filing and allowance only applies to claims in Chapter 11 cases listed in the debtor's schedules as undisputed, noncontingent and liquidated."  *Id.* at 22.  The purported creditors in *Seven-Up* received notice of the unambiguous bar date, and while they knew their claims were listed in the debtor's schedules, the creditors "deliberately chose not to file proofs of claim because they *assumed* that their claims were not disputed."  *Id.* at 23 (emphasis added).  Such failure to file a proof of claim was "inexcusable" according to the court in the face of an unambiguous bar order.  *Id.*  Similarly here, the Extended Bar Date Order unambiguously required all purported interest holders to file proofs of claim notwithstanding any argument they could raise that their interests were not listed as disputed, contingent and unliquidated.  Thus, like the creditors in *Seven-Up*, the Unfiled Limited Partners' failure to file their proofs of interest by the Extended Bar Date was "inexcusable," even if the Unfiled Limited Partners "assumed" that their interests were deemed filed under Section 1111(a) of the Bankruptcy Code.

Finally in *Yonkers,* the bankruptcy court dealt with nearly the identical issue before this court.  A notice was sent to creditors that they must file proofs of claim in order to participate in a distribution, whether or not the debtor had listed the claims in its schedules.  113 B.R. at 154.  One interim rule and the Code provision suggested that no claim need be filed if a claim was

scheduled without designation as disputed, contingent or unliquidated, but another rule suggested to the contrary.  Nonetheless, the court noted it had the authority to direct the filing of proofs of claim, which it had done, regardless of any of those provisions.  *Id.* at 157.  The court concluded it was merely stepping in the gap created by the ambiguities of the rules and statute.  *Id.*

In this case, Judge Lifland performed a nearly identical task.  Interests are not treated the same way as claims by the Code and the Rules.  As a result of the different treatment and the fact that certain of the provisions do not clearly address interests, the Bankruptcy Court was within its power to address any ambiguity by issuing and enforcing his Extended Bar Date Order.  The Appellants efforts to distinguish the ruling based upon the age of the *Yonkers* case, the fact that it dealt with rules that have since been amended or replaced and that it involved Chapter 7 do not weaken the holding.

Finally, to the extent the Appellants rely on *DiCroce*, *ADT* and similar cases for the proposition that a bankruptcy court lacks authority to enter an order directing the filing of proofs of claim and interest in the face of ambiguities, such reliance should be rejected.  When it is alleged that the list of equity holders is not ambiguous and the court exercises its authority to clarify the filing procedures and requirements for claims and interests, such an order is entirely consistent with the Bankruptcy Code, including Section 1111(a).  Any other determination would undermine the reorganization process, not enhance it.

**D.**     **The Rules Governing Amendments to Schedules and**
           **Claims Objections Do Not Apply Here**

In Point IV of the Opening Brief, Appellants continue to refer to case law that relate solely to the scheduling and objection to claims as further grounds that the "comprehensive statutory scheme" warrants reversal of the lower court's decision.  The cases are inapplicable to interests.

After continuing with the faulty assumptions that the Code requires interests be scheduled and designated in the same manner as claims, the Appellants argue that GS and the Trustee had limited options in dealing with "scheduled" interests. Relying on *In re Dynamic Brokers, Inc.*, 293 B.R. 489, 497-98 (9th Cir. Bankr. 2003), Appellants contend that the Debtors had to either amend the Schedules and SOFA or file a claim objection to its Equity Holders List in order to disallow the interests of Appellants. That analysis cannot withstand even minimal scrutiny.

First, there was no need to amend the list. It complies with Rule 1007 and the Official Forms as discussed, *supra*. Second, reliance on *Dynamic Brokers* as the basis for requiring the filing of a formal objection to the Equity Holders List is misplaced. The *Dynamic Brokers* Court was only addressing scheduled unsecured claims. *Id.* at 496. Claims, unlike interests, must contain a designation. Moreover, the decision specifically relies upon Bankruptcy Rule 3007 as the basis for its conclusion that, unless amended, an objection to the undisputed, noncontingent and liquidated scheduled claim is required. *Id.* at 496. By its very terms, Rule 3007 has no application to proofs of interest. *See* Fed. R. Bankr. P. 3007 ("Objection to Claims").

## POINT II

### THE BANKRUPTCY COURT WAS CORRECT IN UPHOLDING THE EXTENDED BAR DATE ORDER TO AVOID AN UNDERMINING OF THE BANKRUPTCY PROCESS

The Appellants do not deny receiving notice of the First Bar Date, the Extended Bar Date and the Disclosure Statements and Plans. The Extended Bar Date Order clearly and unambiguously provided that *all* interest holders seeking distribution from the estate must file proofs of interest by the Extended Bar Date. AA-147-148. In no uncertain terms, the Extended Bar Date Order provided that such filing was mandatory even if the interest in question was not listed as "disputed," "contingent," or "unliquidated." AA-148, ¶ 4, AA-153-156 (Notice of

Extended Bar Date).  Nevertheless, the Appellants failed to file any proof of interest by the

Extended Bar Date.  Moreover, the Plans defined Allowed Interests to include only liquidated

amounts, and Allowed Interests are required to receive a distribution.  Under the express

language of the governing orders and pleadings, the Appellants do not have interests in

liquidated amounts and are not entitled to distributions from the estates.

A creditor or interest holder in a Chapter 11 case who receives appropriate notice of the

bar date and fails to timely file a proof of claim or proof of interest is not entitled to distribution.

*See In re New York Seven-Up Bottling Co., Inc.*, 153 B.R. at 23; *In re Drexel Burnham Lambert*

*Group, Inc.*, 148 B.R. 1002, 1005 (S.D.N.Y. 1993).  Bar dates are analogous to statutes of

limitations and therefore should be strictly observed.  *See In re Keene Corp.*, 188 B.R. 903, 907

(Bankr. S.D.N.Y. 1995).  As stated by the Second Circuit:

> A bar order serves the important purpose of enabling the parties to
> a bankruptcy case to identify with reasonable promptness the
> identity of those making claims against the bankruptcy estate and
> the general amount of the claims, a necessary step in achieving the
> goal of successful reorganization.  To be sure, the amount of the
> claims may not be finally determined until adversary proceedings
> have been concluded, but establishing the identities and interests of
> the participants so that the claims-allowance process may begin is
> an essential function served by a bar order.  Thus, a bar order does
> not "function merely as a procedural gauntlet," but as an integral
> part of the reorganization process.

*First Fidelity Bank, N.A. v. Hooker Invs., Inc.* (*In re Hooker Invs., Inc.*), 937 F.2d 833, 840 (2d

Cir. 1991) (internal citations omitted).  *See also Midland Cogeneration Venture Ltd. P'ship v.*

*Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 128 (2d Cir. 2005).

The Appellants received ample notice and opportunity to ensure a distribution – by filing

a proof of interest as directed in the Extended Bar Date Order.  They made no effort to explain

their failure.  Indeed, it appears that Appellants deliberately refused to file.  Regardless of

whether the failure was deliberate or unintentional, the failure to timely file proofs of interest by the Extended Bar Date prohibits them from receiving any distribution from the estate. *See In re D.A. Elia Const. Corp.*, 2001 U.S. Dist. LEXIS 2134, at *6 (W.D.N.Y. Feb. 16, 2001) (denying claims because "while the bar date may not have been consciously flouted . . . 'the whole panoply of creditor-protection devices that led up to and followed the order containing the bar date . . . were ignored on a systematic basis'"); *In re Celotex Corp.*, 232 B.R. 493 (M.D. Fla. 1999) (barring tardy proof of claims where creditor was aware of claims bar date but waited to file proof of claim until it had "sufficient notice" to justify filing); *In re MarketXT Holdings Corp.*, 336 B.R. at 71-72 (denying claim even though creditor misunderstood that his alleged lien did not "ride through" Chapter 11 case "in the face of a valid bar order").

The Appellants' argument is also inconsistent with the record.  GS filed the Equity Holders List identifying limited partner interests in what it clearly believed to be unliquidated amounts in Attachment B to the SOFA (there was no need to designate them as liquidated or unliquidated, as discussed, supra, no such requirement exists).[6]  Thus, the lower court correctly noted that the Equity Holders Lists did not contain liquidated amounts.  AA-9.  Faced with what are clearly not liquidated amounts, a listing that warns of infirmities and the express language of the Extended Bar Date Order, which warned that proofs of interest were necessary for all interest holders, the Appellants failed to act at their own peril.  Their misunderstanding of the effect of

---

[6] Appellants argue that "estimated" is not the same as "unliquidated" and, thus, they were not on notice that their interests were disputed, contingent or unliquidated by the use of the word estimated.  App. Opening Br. at 21.  The argument has little relevance.  The Rules and Official Forms only require a listing of percentages as to interests, as compared to the more detailed information required for claims, including the liquidated/unliquidated designation.  In other words, interests and claims are handled differently and referenced using different nomenclature.  There is simply no requirement that a debtor ever designate an interest the same way as claims.  Thus, Appellants could not be deceived.

the various Orders and Plans does not render the Appellants' purported interests "deemed filed."
*In re MarketXT Holdings Corp.*, 336 B.R. at 72.

Appellants try to suggest throughout their brief that the listing of equity holders in compliance with Official Form 7 is the equivalent of scheduling a claim in Official Form 6. *See, e.g.,* App. Opening Br. at 10 ("even if the limited partner interest was listed in the Schedules and not scheduled as disputed, contingent, or unliquidated"); at 16 ("the Debtors' Schedules set forth the amount"); at 20 ("[the] interests are valid in the amount set forth in the Debtors' Schedules"). The Appellants are misstating the facts. The Bankruptcy Court correctly ignored their efforts to rewrite Official Form 7.

**POINT III**

**AS NO CONFLICT EXISTS AMONG THE BAR ORDERS, PLANS
AND CONFIRMATION ORDER, APPELLANTS CANNOT
PARTICIPATE WITHOUT HAVING FILED AN ALLOWED
PROOF OF INTEREST**

The Appellants surreptitiously raise Plan interpretation issues when asserting the facts in their Opening Brief. *See* App. Opening Br. at 10-12. Specifically, they argue that the Plans' definition for "Allowed" claims and interests should govern distribution of their purported interests. They further argue that notwithstanding the Extended Bar Date Order, the language of the Plans and Confirmation Order effectively overrule the bar date limitation. Such arguments, which do not belong in the fact section of a brief, are, in any event, untenable.

**A.     The Plans Only Provide for Distribution on "Allowed" Claims and Interests**

The Plans only allow for distribution on unfiled claims or interests if the "Claim or Interest has been or hereafter is *listed by the Debtor in the Schedules as liquidated in amount* and not disputed or contingent." AA-111 (emphasis added). As noted, the Unfiled Limited Partners' interests were not listed in the Debtors' SOFA in liquidated amounts. Thus, by the plain terms of

26

the Plans, the Unfiled Limited Partners' interests were not listed as "liquidated in amount" and are not entitled to distributions from the estates.

Further, if the Unfiled Limited Partners' interpretation of Allowed Interests entitled to distribution was followed, it would render nugatory other provisions of the Plan providing for distribution only on timely proofs of claim and proofs of interest. *See In re 18th Avenue Realty, Inc.*, 2010 Bankr. LEXIS 1553, at *20-22 (Bankr. S.D.N.Y. May 7, 2010) (finding that "plain terms" of Plan would be nullified if creditor's interpretation of distribution on post-petition interest was permitted). As such, the lower court correctly rejected the Unfiled Limited Partners' position that would have rendered the Extended Bar Date Order surplusage.

**B.    The Confirmation Order's *Res Judicata* Effect Does Not
        Nullify the Extended Bar Date Order**

The Appellants' argument that the Confirmation Order is "entitled to *res judicata* effect, thus precluding any subsequent challenges to matters that were or could have been filed" makes little sense. AA-21, ¶ 39. Nowhere in the Plans or Confirmation Order is it stated that the Extended Bar Date Order was superseded or nullified. The Plans specifically require timely filed interests and claims by the "Bar Date" as the basis for distribution and limits distributions to those interest holders who hold interests in a liquidated amount by its definition of Allowed Interests. *See* AA-111 to AA-112.

The Bankruptcy Court correctly noted that there is no inconsistency between the bar orders and the Plans. The estimated interests are, in fact, not liquidated in amounts and thus, without an allowed interest, Appellants cannot receive consideration under the GS Plan. AA-9. Moreover, neither the Plans nor Confirmation Order in any way modify the Extended Bar Date Order. *Id.* Thus, the "*res judicata* effect" of the Confirmation Order bars any effort to circumvent the Extended Bar Date Order and the Plans, which the lower court found entirely

27

consistent.  *See Sure-Snap Corp. v. State Street Bk. and Tr. Co.*, 948 F.2d 869, 873 (2d Cir.

1991); *In re Frank's Nursery & Crafts, Inc.*, 2006 WL 2385418, at *3 (S.D.N.Y. May 8, 2006).

**POINT IV**

**DUE PROCESS AND EQUITY WERE NOT OFFENDED BY
DENYING DISTRIBUTION BECAUSE THE APPELLANTS HAD
NOTICE OF THE BAR DATE AND FAILED TO ACT**

Due process would not be offended by denying distribution on the Unfiled Limited

Partners' purported interests in the Debtors.  While the general principle cited that "equity abhors

a forfeiture" is generally valid in a vacuum, this principle does not excuse the Appellants' failure

to timely file their proofs of interest.  *See* AA-25, ¶ 56 (quoting *City of Wilmington v. Wilmer*,

1997 WL 124151, at *14 (Del. Ch. Feb. 20, 1997)).  Congress had to establish a balance between

the interest in allowing distribution on valid claims with the interest in the judicious

administration of the Debtors' estates.  As such, bar dates are entitled to the same effect as

statutes of limitation, and bar dates are to be strictly construed.  *See In re Keene Corp.*, 188 B.R.

at 907.  Thus, the failure to timely file a proof of interest by the First Bar Date, the Extended Bar

Date, and still having failed to file any proof of interest in the case forecloses any opportunity to

participate in the case.  *See New York Seven-Up*, 153 B.R. at 22 (denying as untimely proofs of

claim filed one month after bar date).

Due process only requires "notice and an opportunity to be heard."  *See St. Joseph Stock

Yards Co. v. United States*, 298 U.S. 38, 73 (1936) (J. Brandeis concurring).  The Unfiled

Limited Partners here received valid and proper notice of both the First Bar Date and the

Extended Bar Date, as well as the Plans.  The Unfiled Limited Partners do not dispute that they

received proper notice.  As such, their only opportunity to secure a distribution was to timely file

their proofs of interest by the Extended Bar Date.  Moreover, the Plans required a liquidated

28

interest, not an estimated percentage, in order to receive a distribution.  The Appellants did not object to the Plans.  The equities do not favor Appellants failure to act to protect themselves.

The estate cannot stay open indefinitely at the behest of interest holders that failed to comply with either the First Bar Order or the Extended Bar Date Order.  *See New York Seven-Up*, 153 B.R. at 22; *In re D.A. Elia Constr. Corp.*, 2001 U.S. Dist. LEXIS 2134 at *5.  On the other hand, it would be wholly prejudicial to the Debtors and the timely filed investors to permit distribution on the Appellants' purported interests that still have not been filed over one year after the First Bar Date, nine (9) months after the Extended Bar Date, and seven (7) months after the Debtors' Plans have been confirmed and became effective.  *See In re Bioastal Corp.*, 242 B.R. 43, 46 (M.D. Fla. 1998) (refusing distribution on creditor's claim filed one-and-a-half years after bar date as "prejudicial to not only the Debtor but to the entire estate").

Finally, the reliance on the equities rings hollow.  As noted, GS properly prepared and filed its Equity Holders List with estimated percentages, not amounts.  The list conforms to the Code and did not require any designation as to whether interests were disputed, contingent or unliquidated in amount.  Nonetheless, the list did carefully note it was only estimated and had potential other infirmities.  Moreover, GS took the extra step of extending the bar date and giving notice to interest holders of the absolute need to file a proof of interest.  It is difficult to understand how sophisticated investors fail to protect themselves.  It is even more difficult to understand how the equities favor someone with full knowledge of the risks, fails to take action. The lower court was correct in denying Appellants' request, as they are not entitled to any distribution from the estate.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, the Liquidating Trustee respectfully requests

that the Court affirm the Bankruptcy Court, deny the appeal, and grant such other and further

relief the Court deems just and proper.

Dated:  October 2, 2012
         New York, New York

                                   Respectfully submitted,


                                   */s/ James N. Lawlor*
                                   Paul R. DeFilippo
                                   James N. Lawlor

                                   WOLLMUTH MAHER & DEUTSCH LLP
                                   500 Fifth Avenue
                                   New York, New York 10110
                                   Telephone: (212) 382-3300
                                   Facsimile:  (212) 382-0050

                                   Attorneys for 217 Canner Associates, LLC,
                                   Liquidating Trustee